BUTTS, Justice.
H. Willis Holmes; Lewis B. Holmes III; Cedar Heights Plantation (“Cedar Heights”), a partnership between Willie Holmes and Lewis Holmes; and Tom McGregor, as trustee in bankruptcy for Cedar Heights, appeal from a summary judgment entered in favor of Goldome Credit Corporation and its corporate parent, Niagara Portfolio Corporation (hereinafter referred to collectively as “Gol-dome”).
In February 1988, Cedar Heights executed a promissory note and a mortgage to Gol-dome in order to obtain a $2.7 million loan to finance the construction of an apartment complex. The note provided for a variable interest rate, with a minimum of 9% and a maximum of 15%; interest payments for the first three years were based on an annual interest rate of ,10.5%. The note provided for seven years of monthly payments and authorized Goldome to accelerate any remaining payments and to foreclose in the event of a default.
In November 1991, Cedar Heights defaulted in making the payments due under the note and mortgage and remained in default until March 1992, when the Holmeses filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Alabama. The Bankruptcy Code’s automatic stay prevented Goldome from foreclosing on the Cedar Heights mortgage. The bankruptcy court subsequently ordered the Holmeses to make monthly payments of $21;-375 to Goldome on the note and stated that it would grant Goldome relief from the automatic stay without further order if the Holmeses failed to make the monthly payments. The Holmeses did fail to make the payments, and Goldome was then granted relief from the automatic stay.
During the pendency of the proceeding in the bankruptcy court, the Holmeses received from a prospective purchaser an offer to assume the mortgage, which had a balance of $2,671,218, and also to pay a note secured by a second mortgage to SouthTrust Bank in the amount of $353,477. The offer, however, was conditioned upon a renegotiation of the mortgage note, to change the variable interest rate to a fixed rate of 9% and to extend by four years the seven-year term of the note. Goldome refused to alter the original terms of the note and mortgage, and the offer was withdrawn. Goldome subsequently foreclosed on its mortgage and sold the property at the foreclosure sale for $2,506,000, fourteen months after the Holmeses’ first default on the promissory note.
The Holmeses then sued, alleging that Gol-dome had a duty as mortgagee to fairly and equitably manage the mortgage and that Gol-dome had represented that it would do so. The Holmeses argued that Goldome, by failing to alter the note and mortgage so that they could sell the property before a foreclosure, breached its duty and committed fraud. Goldome moved to dismiss the claims or, in the alternative, for a summary judgment. The trial court entered a summary judgment for Goldome on the merits of the claims. The trial court held that, as a matter of law, Goldome had no duty to alter the terms of the original note to make them more lenient than those that had been bargained for, merely to allow the Holmeses to avoid a foreclosure. The court wrote an opinion elaborating on its holding:
“Cedar Heights argues that the allegations of its complaint include a claim that Goldome failed to exercise fairness and good faith in connection with the sale of the property. However, no evidence has been presented indicating any unfairness in connection with the sale. Furthermore, Cedar Heights was in default in making the payments of interest due under the note and mortgage in November 1991. The foreclosure sale didn’t take place until January 15, 1993, approximately one year and two months later. Even after default, Goldome had entered into a consent order permitting the Holmeses to pay Goldome the sum of $21,375.00 per month commencing September 1, 1992, the date of the bankruptcy court’s two orders. The Holmeses defaulted on that payment even though no requirement was made at that *232 time that they also pay the due and unpaid installments of interest.
“No evidence of any kind has been presented in support of any claim that Gol-dome acted unfairly or inequitably in connection with the foreclosure sale. Counsel for Cedar Heights does refer to the earlier offer made by Evans at a greater price, but that offer was conditioned on Evans’s being allowed to assume the mortgage made by Cedar Heights on more favorable terms. The final purchase by the Evans partnership was for cash. It consequently cannot be compared with an offer based on credit and on obtaining more favorable terms that those set out in the promissory note and mortgage here at issue.”
We agree with the trial court’s reasoning and adopt this quoted portion of its opinion as part of this Court’s opinion. Because we affirm the summary judgment based on a conclusion that the defendants had no liability to the plaintiffs, we need not address the plaintiffs’ contention that the court had erred in striking their claim for punitive damages.
AFFIRMED.
HORNSBY, C.J., and ALMON, HOUSTON, and INGRAM, JJ., concur.